My name is Randy Rump. I represent Cheryl Spata, who is the appellant and was the plaintiff below. She worked in Pahrump, Nevada, which is a little community about 60 miles west of Las Vegas in Nye County. She worked for the Defendant or Appellee's Grocery Store as a front-end manager. In October of 2002, the store underwent some renovations. Mold was discovered and she became ill, along with other employees. She started questioning the store about mold and testing. She was reprimanded by the store manager, Rod Scherer. She ultimately filed a worker's compensation claim, and after these complaints and filing that claim, she was reprimanded for things that had been going on in the store for years and no reprimands had been given, and then ultimately she had overtime taken away. Subsequent to that, in September of 2003, there was an incident that I've called the off-the-clock incident, where Anna Sudgen, another co-employee, was told to work off the clock. She came to my client and said, I forgot I clocked in. What do I do? My client became alarmed, obtained statements from two other employees as to what was going on. She complained again to Rod Scherer, the store manager, about this. She was very concerned because she felt it was illegal. She also complained to Gina Santoli, Defendant or Appellee's District Manager. Right after she complained to Gina Santoli, she received, which was approximately two weeks after the incident, she received a disciplinary written reprimand that said, basically, you are harassing and intimidating employees. If you do this again, you will be terminated. It's our position that that discipline itself is, in and of itself, illegal under the Fair Labor Standards Act. Illegal as an act of retaliation under the FLSA or retaliation? I'm sorry? Illegal under the FLSA or an act of retaliation establishing some sort of an adverse employment? Both. The FLSA's 29 U.S.C. 215A3 is the anti-retaliation provision. When I say illegal, I mean it's a violation of that act. That's what I mean. The lower court did not address that. My client, in her declaration, stated that she was told by the store manager the reason for that written reprimand was because of the off-the-clock incident and her complaints about it. She said that in her deposition also. The lower court failed to address that. Shortly after she went to Gina Santoli, the district manager, she was demoted. She had her hours cut by 20 hours and she was demoted just to a checker. It's our position that that demotion also violated the anti-retaliation provision of the Fair Labor Standards Act. Did anything occur in between the time that she was reprimanded for this? And the time that she was demoted? No. She said in her declaration that this was the only thing that... Nothing occurred at all? No. There was no conversations between her about mold with other employees? She said that it was the... No, the only thing that happened was she went to the district manager and right on the heels of that, she was disciplined for this. And that's what... Right on the heels of what? On the heels of going to Gina Santoli, the district manager, and complaining about the off-the-clock incident. So in between, what happened? Nothing? Nothing. She went to Gina Santoli. That was what happened. That's the only thing that happened. Where was she told not to be speaking negatively about the company? And if she did, there was going to be some action taken? That was in the reprimand dated October 2nd, 2003. Recall the off-the-clock incident happened on September 18th of 2003. October 2nd, she's given the reprimand by Mr. Shearer, the store manager, and he tells her, this is because of the off-the-clock incident. And that's in her deposition and that's in her declaration. And shortly thereafter, she goes to Gina Santoli, the district manager, and complains again about the off-the-clock incident. In her declaration, she says she knows that Gina Santoli called and talked to Mr. Shearer. She doesn't know what about, but she assumes it was this. And then right after that, she gets demoted, which was... She said she talked to other employees in the store about the mold in the box. That was the mold. That was the mold incident. But that was asked at her deposition and there was no time frame given as to when those conversations took place. So she indicates that... Told not to be speaking negatively of the company in reference to the mold? That's not in the record. The reprimand only says you're intimidating employees and don't speak negatively about the company. It didn't say whether it was the mold or the off-the-clock incident, but my client... The record does contain my client's declaration and my client's deposition testimony where she says it was related to the Fair Labor Standards Act or the off-the-clock incident. Off-the-clock incident. That's what she said. She said that when she received the October 2nd reprimand from the store manager, he told her this is related to what happened with the two employees and obtaining statements from Anna Sudgen and Flo Casper, who were also employees. Those are in the record. She had them make statements or write statements about what had happened. So very closely on the heels of going to the district manager, she's demoted, and it's our position that the October 2nd reprimand and the demotion are retaliatory for the off-the-clock incident, and we claim that that is protected under the Fair Labor Standards Act. The lower court said, at least in relation to the Fair Labor Standards Act claim, that there was no evidence to sustain that claim. The lower court ignored direct evidence and only used the McDonnell-Douglas shifting burdens test, which we've cited the TWA versus Thurston Supreme Court case that says if there's direct evidence, you don't even get involved in the shifting burdens test of McDonnell-Douglas. What was that direct evidence? Well, two things. One, he told my client on October 2nd when he reprimanded her, this relates to the off-the-clock incident. So that's direct evidence right there that the demotion was, and then he says if you do it again, you're going to get reprimanded if you talk badly about the company. I will readily admit, and she admitted in her deposition, during a break, and I think that's key because that seems to be missed here, during a break, she talked to another employee about her workers' compensation claim and said that her attorney told her she was going to win and it's a slam dunk, and she admitted that was false. She admitted that was false, and so Mr. Shearer found out about that and demoted her for that, and in that demotion he says I warned you back on October 2nd, so now you're being demoted. The court ignored the October 2nd reprimand, but for a reprimand that is clearly in violation of the Fair Labor Standards Act, she would not have been demoted. The lower court ignored that direct evidence. Secondarily, there's direct evidence in the testimony of Anna Sudgen. In her deposition, she was the one who forgot to clock in. The store manager pulled her back with an assistant manager into an office and said, you could have cost me my job. You have created a lot of trouble over this off-the-clock incident. It's my position that that anger over protected conduct, the off-the-clock incident, is direct evidence of a retaliatory mindset. The district court didn't even address that. The district court just said I assume you can make a promiscuous case, but you can't show pretext because you admitted that you, on the break, did some trash talking, I guess, for lack of better words, and he just totally ignored the direct evidence here, and my position is because there's direct evidence of a retaliatory mindset on the part of Mr. Shearer that we should have been able to have this tried by a jury. That's the FLSA claim. The appellee makes arguments that even if the judge was wrong, there are other reasons that he was right, which is, well, she really didn't make a good enough complaint under the Fair Labor Standards Act, but this court in Lambert v. Ackerley, which involved the very same act, the very same provision, said you don't have to state what statutes you're arguing about. You just have to make a claim, and she told the regional manager, someone's working off the clock. Clearly, that implicates the Fair Labor Standards Act because somebody's not going to get credited for time worked, and they're not going to at least be paid minimum wage, and they may not get overtime for that time worked, so the Fair Labor Standards Act was clearly implicated. Gina Santoli, the district manager, tells my client, these are very serious allegations that you're making against Mr. Shearer, the store manager, so the defendant or appellee clearly understood that these were very serious allegations. These were not some amorphous complaints. They were very concise and dealt with off the clock Fair Labor Standards Act violations. My client thought it was illegal also. She said that in her declaration. The other idea that I've set forth in the brief besides the direct evidence is the idea of timing. This court in Pasatino v. Johnson & Johnson Consumer Products, I think that's a year 2000 case, said timing alone is sufficient to get a case to the jury. Timing close enough on the heels of protected conduct, even in the face of a legitimate nondiscriminatory reason set forth by the defendant, can get you to a jury. That can prevent a motion for that argument. He didn't even address it. So my position is the October 2nd reprimand within 2 weeks of the protected conduct, that is sufficient to be a violation of the Fair Labor Standards Act and then the ultimate demotion 5 weeks after the fact that referenced the October 2nd reprimand under Pasatino, the timing alone should get us to the jury. The lower court, again, didn't address that. The other issue that the defendant makes, by the way, in Godwin v. Hunt this court held that you just need a little bit of direct evidence to get a case to the jury and avoid summary judgment. I think we presented much more than a little bit. The defendant also makes the issue that this was part of her job duties. My client adamantly denies that. They have submitted in the record a document that they did not produce pursuant to NRCP 26 and they produced that only in their reply brief that shows job duties of a front end manager and it references health code violations. But at a bare minimum, if you believe that the position they set forth that it's part of her job function and therefore she doesn't have a claim because she's required to make these complaints, even if you buy into that, we've at least presented a fact issue as to whether it really was part of her job function. I don't believe this circuit has adopted that rule. I believe it is a foolish rule. In Macaulay Act, this court held that a nuclear plant inspector who's doing his job deserves protection under the anti-retaliation provision of the Energy Reorganization Act. This circuit held he's doing his job and that's protected. They're trying to claim that somebody who's doing their job isn't protected. I speak from personal experience. I spent four years as a corporate lawyer for a publicly traded entity in Nevada who had casinos in Las Vegas and Reno. I can certainly tell you that there is friction between the human resources department and management on a consistent basis. Human resources and even the legal department. Are we making an argument here based on evidence outside the record? Well, this is an argument because... I understand it's an argument, but it's not an admissible argument. So why don't we get back to the point? I believe that it's a foolish position to take to say somebody's job requires them to complain and therefore they're not protected. Why? Because they have to do this pursuant to their job requirement. Why are they not protected? In Macaulay Act, the nuclear inspector was protected because he did that pursuant to his job. They're saying that my client was making these complaints about the FLSA pursuant to her job as a front-end manager where she's in charge of the checkers. At a minimum, we've presented an issue of fact as to whether that was, but I think that is a very foolish idea because now everyone in the tents, every person in human resources who resides within the tent circuit, which is past this rule, has to worry, is my job on the line when I go to management and say, hey, we're out of compliance here because I'm not protected. I can't go to management. And so that's why I think it's foolish. The public policy tort issue, the state of Nevada has held that it is, you cannot discharge an employee, it's a violation of public policy to discharge them in retaliation for filing a workers' comp claim, Hanson v. Harris, or in retaliation for making complaints about the environment at work damaging your health. That's the Western States Minerals case. In Beckwith, it was a workers' comp retaliatory discharge. There was no termination. The employee was harassed. She was an employee at Dillard's Department Store, and she was harassed to the point where she quit. And the court upheld, which was at that time the largest employment verdict in the state, upheld it in Beckwith and said that that is sufficient. We will recognize that cause of action for constructive discharge. But what if the employee doesn't quit? And that's the issue here. Is there really, is there a claim for tortious harassment in Nevada? The defendant of that police says, no, we can harass employees all we want in retaliation for filing workers' comp or in retaliation for complaining about your health on the job. If they don't quit, they don't have a claim. If they quit, they don't have a claim. So the claim depends upon the fortitude of the plaintiff. I don't think that is the law, and I don't think that's what the Nevada Supreme Court intended in Beckwith. They found that harassment was actionable, and they found it a constructive discharge. My position is it's still actionable even if the client doesn't quit. And the lower court said, no, it was not. So with that, I will await my rebuttal. Okay. Thank you very much. May it please the Court, Stephen Bednar, Manning Curtis Bradshaw and Bednar in Salt Lake City on behalf of Smith's Food and Drug Centers, Inc. Just to begin, I want to quickly answer Judge Thompson's question about whether anything happened. That's Judge Thompson. Sorry. He's the good-looking one. That's Duffy's question about... Yeah. We're trying to... I didn't like Judge Duffy having to walk all the way down. Excuse me. The question was whether anything happened between October 2nd, when she received a warning about speaking negatively about the company and its officials, and October 30th, when she was demoted. And Mr. Rumpf had indicated that nothing happened. Well, there was something that was very significant. It happened on October 26th, right before the demotion occurred. And this is Ms. Spada's testimony about what happened. It was this conversation that took place in the break room, where she speaks with Debbie Kuykendall, a co-worker. And here's Ms. Spada's testimony about what happened. And then you had this conversation with Debbie Kuykendall. Yes. Did you tell Debbie that Jenny Lee, who is the Regional Director of Human Resources for Smith, did you tell Debbie that Jenny Lee lied to you? Yes. Question, what does that have to do with the mole? Answer, it didn't have to do with the mole. It had to do with her lying to me, meaning Jenny Lee, that she accidentally deleted messages that I had put on her phone, and that's why she didn't call me back. Does that have something to do with the mole? No. Sam had also told me that her attorney told her that she had won her case. Did you say that? Yeah. Is that true? Well, no. I was just telling her that. Is that a lie? Pretty much. And your attorney told you that he had your case won? Answer, no. So that was a lie. Yes. Why did you lie about that? Because Debbie Kuykendall was really ticking me off. I told her that we had enough evidence to win, that we had the case won. And what she's talking about here is her workers' compensation case. Because I knew she was going to run back and tell Rod. And you wanted her to do that? Yes, I did. So you were using her? Yes, I was. Do you have a tendency to lie when you're mad? No, not really. That's what prompted you to lie here? Well, yeah. Now, that happened four days before she was demoted. And she admits in the record that she knew that using Debbie Kuykendall in that manipulative and coercive manner was a violation of that warning. And she was demoted four days after that. That's a very important thing to have happened in between the warning and the demotion, and only four days before the demotion. Now, I would like to have my argument go in a little bit different direction than Mr. Rump's. Because Mr. Rump's argument... Did she talk negatively about the company after she'd been warned not to do so? That's correct. And did she talk negatively about the company concerning the mold as well as the telephone? Not the off-the-clock. The negative speak about the company involved two things. It involved the mold, because she lied to a co-worker and said, My lawyer said I've got my workers' compensation case on the mold one, which she admits was a lie and a violation of the warning. That's the mold. That's the mold. And the second one is that she said that the regional director of human resources, Miss Jenny Lee, was a liar. And the reason she said Miss Jenny Lee was a liar had to do with the fact that Miss Spada said that Jenny Lee had not gotten some messages that Cheryl Spada said she had left on her phone. So it doesn't relate to the Fair Labor Standards Act. It relates to the mold. And it happens four days, October 26, and the demotion is on October 30. Now, here's what I'd like to do, if I may. Mr. Rump has talked about evidence. Evidence of discriminatory intent. I want to back up, because I think he has invited this court to cook this appeal in the wrong kettle. He has invited you to get bogged down in questions of evidence and to weigh evidence for the purpose of suggesting that, well, there's factual disputes on some of this, so maybe there's a genuine issue of material fact. Wrong way to go. It's inviting to go that way because Judge Dawson, in essence, when the case was presented to him, skipped over the prima facie case elements and went straight to the issue of pretext because there was this tantalizing, irresistible slam dunk on the issue of pretext. Below, Ms. Spada only raised two arguments of pretext. She said, well, the warning and demotion were pretextual, one, because they didn't follow their own internal procedures in demoting her, because it wasn't internally reviewed. And Judge Dawson knew that he looked at that and he said, well, she's offered no evidence of that. And the only evidence in the record is that they followed scrupulously those procedures. So that pretext is out. And the only other pretext argument that was offered below was to say that in addition to not following their procedures, that there were warnings and disciplines subsequent to the demotion. And Judge Dawson quickly said, well, what happens after the demotion isn't probative to the intent at the time of the demotion. Those are the only two pretext arguments that were raised. They were quickly disposed of, and absent a showing of pretext, we had Ms. Spada's own admission that she violated this October 2nd warning by using, manipulating, and coercing this co-worker. And so Judge Dawson said, no evidence of pretext. We have a valid LNDR, legitimate nondiscriminatory reason, that Ms. Spada admitted to. And so I don't want to deal with prima facie case, because I've got this slam dunk. Now we're here, and Mr. Rumpf is saying, all right, I give up on pretext. Mr. Rumpf isn't arguing that there was error in finding pretext. He's saying Judge Dawson should have looked at my evidence of retaliatory motive, because now that I've lost on pretext, I want to go to retaliatory motive. I want to back up and go to prima facie case, because it doesn't involve any disputed evidence. There have been recent developments in the law since this case was briefed that speak to it, and allow this court to dispose of this appeal and affirm below, on the ground, that Ms. Spada did not engage in protected activity, which is an essential element of her prima facie case. So if I may, I'd like to address that. First of all, in terms of conceptual construct, if the court accepts that argument, that there's no prima facie case, we never get to motive evidence. If a plaintiff did not engage, can't meet prima facie elements, which include protective activity, contemporaneous adverse action and causation, then we never look at direct evidence. We never even look at indirect evidence, and we never even look at a legitimate non-discriminatory reason. Now, what has happened with the law? The law has become more clear since this appeal was briefed by virtue of two decisions within this circuit, and a decision by this court. At the time that the case was briefed, there were four decisions that spoke to this. The first was a 1996 Tenth Circuit decision, McKenzie v. Renberg, Inc., which issued the rule out of the Tenth Circuit that when an employee acts within their job duties, they're not engaging in protected activity. Now, Mr. Rumpf has made the argument that they should be, that the fact that their job requires it should not diminish their protected activity. I say that's completely wrong. Protected activity is not defined by doing your job. It's defined by doing something that a statute protects. And there's no statute that says any time you're doing your job, you're protected by statute. So McKenzie issues the rule that if you're discharging a job duty, it's not protected activity. That's 1996. Second, this court's en banc decision in Lambert in 1999. Lambert does not refute that position. It decides a very simple and straightforward issue, which is, is it enough to complain internally as opposed to going to the United States Department of Labor to make a complaint? And Lambert decided, and I think correctly so, that an internal complaint is enough. That when someone comes inside a company and says, if they say, say it with clarity, so that it's sufficiently clear, and they specifically allege a violation of law, then it's protected. And that was easy in Lambert because you had six sales representatives of the Seattle Supersonics who went to the Department of Labor, found out that Seattle Supersonics were violating the FLSA, came to the controller, and said, the Department of Labor has told us that you're violating the statute. You owe us money. And they had their lawyer send a letter to the Seattle Supersonics that says the statute is being violated, you owe them money. And so Lambert was easy. You had a very clear demand for concrete payment and a violation of the statute. And what Lambert holds is that internal complaint is enough. Now, just shortly after, a few years after Lambert, the First Circuit joins with the Tants and says, you've got to act outside of your job. If you're just discharging your job duties, that's not protected activity. That's the Becton-Dickinson decision. That's where we were when we briefed. Now, 14 months ago, within this circuit, at the district court level in the Eastern District of Washington, this is in our 26J Supplemental Letter of Authorities, Stein versus Rousseau was decided. And they looked at Lambert, and they looked at McKenzie, and they looked at Becton-Dickinson, and they said, what will the Ninth Circuit do in cases where you have someone acting within their job? Because that's exactly what happened in Stein. You had the general manager of a company called Hotwire Direct, who looked out and saw what he thought were violations of FLSA, went to the owner and said, you better fix these, and suggested that they call Region 10 of the USDOL to get information. And the owner said, don't you dare pick up that phone. His words were, put the damn phone down. And then the GM was fired the next day. And that court, in predicting what this court would do, if you're interested in knowing what the lower courts are thinking, what they think you'll do, gave this analysis. Mr. Stein questions whether the First and Tenth Circuits interpret the Fair Labor Standards Act as broadly as the Ninth Circuit does. In Lambert, the court carefully reviewed cases from other circuits, including the First and Tenth, and the court recognized that both the First and Tenth Circuits broadly interpret the FLSA. Nowhere in Lambert did the court suggest that this circuit's interpretation of the FLSA is broader than the First and the Tenth's. To the contrary, the court agreed with its sister circuits concerning the proper interpretation, saying there is a point at which an employee's concerns and comments are too generalized and informal to constitute complaints. It is important to note that the Ninth Circuit has never held that anything less than a concrete request for compensation. That's it. A concrete request for compensation is protected. In that regard, the Ninth Circuit is like the Tenth. In sum, it is likely the Ninth Circuit will follow the lead of the First and Tenth For one thing, they interpret the FLSA as broadly as it does. For another thing, the Ninth Circuit has acknowledged that not all employee statements concerning overtimes are covered. Only where an employee asserts statutory rights by taking some action adverse to his company, which is implicit in Lambert's rationale, holding, and dicta. And then, just three months ago, in our 26-J letter, again in the decision of Lund, versus Leprino Foods, here you have a retaliation case and that circuit, that court within this circuit, cites McKinsey saying that the employee never crossed the line of being a manager. So here's the touchstone. Under Lambert, as to the extent Lambert is, and the lower courts in the circuit have found it to be consistent with McKinsey and Beckman-Dixon. Here's what you have to have. We know an internal complaint is enough. Ms. Spada's complaint, to the extent it exists, is internal. You have to have a concrete demand for compensation. You have to have a clear and specific communication that there is an illegal act. What do we have here? From Ms. Spada's own affidavit at page 161 in the excerpts of record, this is what she communicated to the store manager. I advised Rod, the store manager, that this was bothersome to me that an employee had been told to work off the clock. It's not an allegation of illegality. It's certainly not a demand for compensation. Isn't working off the clock, though, just shorthand for an FLSA violation, which statutorily prohibits making employees work without compensation? Clearly, working off the clock, requiring an employee to work off the clock is a violation. But what we have here is a front-end manager whose job description Mr. Rumpf did not quite correctly characterize because at page 302 of the record, her job description is to observe all store rules and policies and to ensure adherence to all local, state, and federal code regulations. It's not just a health code. And so, within her job duty, she has a responsibility if she hears that a direction has been given to work off the clock to correct it. What did she do here? She went to Rod and she said, why did you tell Anna to work off the clock? And Rod answers by saying, we were correcting a sales-labor ratio by allocating this time to a prior time period. This plaintiff never believed that that individual, that that third party, had not been paid. Here's what the record says on that particular point, which is important. Ms. Sugden testified, Did you have any concern that you weren't being paid for the hours worked? No. Did you ever make a complaint about not being paid? No. That's the individual whose time was reallocated. Ms. Spada testified, She is sure Smith paid Sugden for all hours she worked. Excerpts of Record 74, her deposition. When Cheryl Spada went to Madeline Glunt to tell her about the incident, she told her that she knew she had been paid. That's Record 94. And Ms. Spada testified that she knew she'd been paid because she told her to punch in. So what she's upset about is that this instruction was given, she knows that she's corrected it, there's never a demand for compensation, there's never a statement of illegality, and she is clearly acting within what her job requires her to do as a front-end manager. Mr. Rumpf mentioned the McCowick decision. McCowick relates to whether internal complaints are covered. It's undisputed. McCowick stands for that proposition. In McCowick, which by the way was 1984, 10 years before this line of cases evolved, involves very unique circumstances, peculiar to the Nuclear Energy Regulatory Commission, because McCowick said, Every action by a quality control inspector occurs in an NERC proceeding because of their duty to enforce NERC regulations. Well, front-end managers at grocery stores do not have a duty to enforce the Fair Labor Standard Act as deputized officials of the United States Department of Labor, and when a front-end manager goes to a store and says, Hey, I think this practice might be questionable, we might want to fix it, they're not acting in a USDOL proceeding. So McCowick is clearly in opposite. Additionally, the statement of violation of law has to be clear. That comes from a decision three months ago in Hardwick v. Complete Sky Cab Services, where a plaintiff again had alleged violations of the Fair Labor Standards Act, and the court said, In order for appellant's complaints to be protected under the FLSA, the complaints must be specifically concerned FLSA violations and must be directly communicated to the employer, citing Lambert. And again, that's in our 26J letter. Why is this important? Because if she didn't engage in protected activity, everything Mr. Rumpf talked about during his time is irrelevant. There's no motive question. There's no issue of direct evidence. I could refute all of the direct evidence he offers, but I leave myself vulnerable to this court saying, Well, now we're weighing evidence. The correct disposition of this appeal is on the legal question on Ms. Spada's own testimony and her own affidavit. Quickly to the public policy tortious discharge question. Let me just, before I leave that, add that the issue of causation also is a prima facie case element, and with respect to that issue, Ms. Spada admitted that she violated that warning on October 26th when she spoke to Debbie Kuykendall. So her own testimony shows that the issue of causation could not be met, which is also a prima facie case element. Public policy wrongful discharge. Beckwith was a constructive discharge case. This is not. Ms. Spada testified in the record that her employment had never been terminated. She was currently employed at the time the case was decided. In the briefing, Mr. Rumpf goes to the Bearden, United States District Court of Nevada decision saying that the policy implicit in tortious discharge comes from the workers' compensation statute itself and relates to any device that has the impact of modifying or altering the impact of that statute. That case specifically supports the critical distinction between someone who has been terminated, either involuntarily or constructively, and someone who's been demoted but still has their job for this simple reason. Somebody who's been demoted and still has their job still has workers' compensation insurance. And so the policy of that case definitely supports the critical distinction that Judge Dawson made and that Beckwith made as a constructive discharge case because they keep their workers' compensation insurance. And we cited in the brief several decisions emphasizing that a federal court should not exercise to refine the contours of state law and that that public policy wrongful discharge law in Nevada is very narrowly defined. The complaint does not allege, and there is no argument, that Ms. Spada was constructively discharged from her position. In addition, even if the court were to recognize that, there's another employee, Madeline Glenn, who engaged in the exact same protected activity, filed a workers' compensation claim based on mold, complained in her words vocally and loudly to everyone in the store about the mold, and testified in the record, and her testimony in the record on this point is, I believe, at page 84, that she had never been demoted, discharged. She had only received promotions and raises throughout her employment. My time is up. Thank you very much. In reply, I think it's important to note what I said in my opening, which is this conversation was on a break. If you look at excerpts of Record 121, which is the October 2nd reprimand, it says that if you talk to employees negatively towards Smith that causes intimidation, coercion, or undermining Smith in any way, while they or you are on the clock. They or you are on the clock. My client was on a break. So he violated his own October 2nd reprimand by demoting her for something that happened when she was on a break. He didn't talk about that. When they go on break, do they go off the clock? It's my understanding. They say, well, I'm going to go have a cup of coffee. They clock out, have a cup of coffee, come back and clock in again. It's my understanding, but that's not in the record. But it was still on a break, and those are mandated by state law, like in California, Nevada has similar laws to California. You asked what was discussed. What was discussed was her worker's comp claim. She was talking about what her lawyer told her about the worker's comp claim. She said that Ginny Lee had lied to her. She'd been trying to get ahold of Ginny Lee to talk about the off-the-clock incident. So the worker's comp claim was based on exposure to the mold, was it not? Yes. And it's actually still ongoing. There's a hearing on Monday. Is she still working? Is she on medical leave? She's on leave. Could you address the argument with regard to the distinguishing of Beckwith on the constructive discharge case? Because it does seem to me that you are asking us to extend the principle to recognize a tort of retaliatory demotion, which the Nevada courts have yet to do. Right. Well, it just so happened the plaintiff in Beckwith quit. If she hadn't... I argue, I guess you could call it a tortious harassment or a tortious demotion. Nevada, in the Ponzoc case that we cited, Kmart v. Ponzoc, which is a 1987 Nevada Supreme Court case, makes it very clear they look to California law when it comes to enunciating tenets of employment law and what is tortious discharge that is in a footnote in Ponzoc. California, in the Garcia case, clearly recognizes tortious harassment or something less than... Okay, but you don't have a Nevada case that you can cite to us that we can follow, and we are sitting in diversity under Erie and... They've never decided that. I readily admit they've never decided that. But I think Beckwith certainly indicates they would go that way because she quit, but my client didn't, so my client has a little more fortitude and she can withstand the harassment. Beckwith couldn't. But your client also has certain benefits. Well, I would like to address that. There was an implication by opposing counsel that if you're terminated, you don't have workers' comp benefits. That's not right. In Nevada, if you're terminated, you still have workers' comp benefits and you still have your rights under the workers' comp system, so that is an incorrect statement of the law. But yes, she did have the other... She had her job, but she did state in there that she lost her health insurance in her declaration and in her deposition. But she talked about Jenny Lee and about her workers' comp claim. She'd been trying to get ahold of Jenny Lee to talk about the off-the-clock incident, which is protected. Opposing counsel failed to discuss Pasatino and timing. That's clear. Whether she... In Pasatino, this court said timing alone, even in the face of other reasons set forth by the employer, that is sufficient. The other cases that they cite, the Eastern District of California case where I also practice, that dealt with a very specific California statute and not a federal statute. They talk about stepping outside of your duties. What does it take to take a position contrary to your duties? We cited HPE, EEOC versus HPE, an Eighth Circuit case. A requirement of stepping outside a normal role, even if you adopted their position, my client did this, is satisfied by showing that the employee took some action against a discriminatory policy. This placed him outside the normal managerial role, which is to defer the company policy. That's what my client did. So even if you adopted that McKenzie position, my client stepped outside her normal role and took a position contrary to that. The other Ninth Circuit case they cited is inappropriate. Thank you, counsel. The case just argued is submitted and we will be in recess until 9 a.m. tomorrow morning. Thank you.
judges: Thompson, Tallman, Duffy